Hart, J.,
dissenting. Because of my view of the legal effect of the four contracts involved in this action, I am obliged to dissent from the judgment herein rendered.
In the 1918 contract, the blanket company was given the right to use the sidetrack of the railroad company and also the right to construct “a shed or covering over and across said sidetrack and connecting the two buildings” of the blanket company. As a condition to the grant of such permission, the blanket company agreed “not to erect, or allow to be erected, any *509 building, structure or fixture of any kind in dangerous proximity to said track, and will protect, indemnify and save harmless the first party against loss, damage and expense in consequence of injury to person or property by reason of such structure or fixture.’’ (Italics supplied.)
The indemnity clause of the contract was not specifically limited to the “shed or covering over and across said sidetrack, ’ ’ but was a general indemnity covering any “such structure or fixture,” the relative adjective, “such,” meaning the same or identical thing and referring to “ any building, structure or fixture of any ldnd in dangerous proximity to said track. ’ ’ The term, “dangerous proximity,” may as well have applied to structures above the track as to those on the side of the track.
By the contract of 1920, the blanket company was granted the right to erect temporarily an overhead unloading machine adjacent to the sidetrack of the railroad company. The contract provided further that “the overhead connections of the said unloading machine when not in actual use in such loading and unloading shall be” by the blanket company “swung or placed and kept a sufficient distance from the track” of the railroad company “to at all times insure the safety of cars and engines upon said track as well as persons and property in or upon the same.”
The blanket company agreed to indemnify, protect and save harmless the railroad company from “all liens, actions, costs, loss and damage growing out of or resulting from injuries to persons or damage to property which may arise or result from the location, maintenance and operation of the said unloading machine and appurtenances or other buildings, structures or fixtures, by the said second party or any other person or persons in its behalf.” (Italics supplied.) As stated in the majority opinion the unloading machine *510 itself referred to in the contract was never erected.
The 1921 contract related to an additional sidetrack and has no bearing on the present controversy. The 1941 contract provided for the construction by the railroad company of an additional sidetrack and expressly superseded the 1921 contract. However, significantly, the contract of 1941 expressly provided that the contracts of 1918 and 1920 were not superseded. However, notwithstanding the existence of the contract of 1941, no unloading machine, the specific subject of the 1920 contract, had been erected.
On May 29, 1947, the plaintiff, Greorge Kay, while riding upon and switching a railroad car on the track of the railroad company adjacent to the property of the blanket company, was injured when he struck the overhanging drawbridge which was owned, operated and maintained across the railroad track by the blanket company. The railroad company claims that the overhanging drawbridge was constructed, maintained and operated by the blanket company pursuant to the 1920 contract under the designation of “the overhead connections of said unloading machine when not in actual use in such loading and unloading,” whereas the blanket company, while admitting that the drawbridge was constructed by it over the Commercial street sidetrack named in the contract, with full'knowledge and consent of the railroad company, claims that the drawbridge was not constructed, operated or maintained pursuant to either the 1918 or 1920 contract, and. that neither contract referred to or in any way included the drawbridge in question.
The record discloses also that the drawbridge in question was constructed in 1939 for the purpose of permitting men and materials to pass from one building of the blanket company to another; that it was so constructed and hinged at one end that it could bo *511 raised to permit the passage of engines and cars under it upon the Commercial street sidetrack; and that the bridge was so constructed that when in a lowered position it afforded a clearance above the Commercial street sidetrack of not more than 13.35 feet and when raised to its maximum elevation the lowest portion of the bridge was not more than 19.14 feet above the track. The record further discloses that on March 24, 1938, prior to the 1941 contract which expressly recognized the 1920 contract as still effective, the railroad company by letter to the blanket company called its attention to an administrative order of the Public Utilities Commission referring to the fact that the statutory law of Ohio provided for a clearance of not less than 21 feet above sidetracks and explaining how exemptions from such clearance might be obtained by industrial plants.
Under this record, as I view it, the drawbridge in •question, while not specifically named in the contract, is clearly one of the structures within the meaning of the language of the indemnity clause of the contracts -and the blanket company should not be relieved of its liability thereunder. The indemnity coverage of the 1918 contract, “not to erect, or allow to be erected, -any building, structure or fixture of any kind in dangerous proximity to said track, and will protect, indemnify and save harmless the first party against loss, -damage and expense in consequence of injury to person or property by reason of such structure or fixture, ’ ’ -and the words of the 1920 contract, “indemnify, protect and save harmless the first party, its successors and assigns, from all liens, actions, costs, loss and •damage growing out of or resulting from injuries to persons or damage to property which may arise or result from the location, maintenance and operation •of the said unloading machine and appurtenances or *512 other buildings, structures or fixtures, by the said second party or any other person or persons in its behalf,” necessarily include the movable overhead drawbridge which was then constructed over the sidetrack of the railroad company in Commercial street and which caused plaintiff’s injuries.
In my opinion, the judgment of the Court of Appeals should be reversed and that of the Common Pleas Court affirmed.
Zimmerman and Taft, JJ., concur in the foregoing dissenting opinion.